IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ELAINE RODRIGUEZ, et al.** | |
| **Plaintiffs,** | |
| v. | CIVIL NO. 14-1398 (PAD) |
| **EXECUTIVE AIRLINES, INC., et al.,** | |
| **Defendants.** | |

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

Plaintiffs initiated this action in the Carolina Part of the Court of First Instance of Puerto Rico against Executive Airlines, Inc. and others,[1] alleging unjust dismissal under the Puerto Rico Unjust Discharge Act, Law No. 80 of May 30, 1976, as amended, P.R. Laws Ann. tit. 29 § 185a et. seq.; age discrimination in employment pursuant to Puerto Rico's general antidiscrimination statute, Law No. 100 of June 30, 1959, as amended, P.R. Laws Ann. tit. 29 § 146 et. seq.; and entitlement to meal period compensation in conformity with the Puerto Rico Working Hours Act, Law No. 379 of May 15, 1948, as amended, P.R. Laws Ann. tit. 29 § 246 et. seq. Defendants removed the action to this court based on diversity of citizenship in accordance with 28 U.S.C. § 1332(a).

During discovery, plaintiffs unsuccessfully requested information on defendants' employees and openings outside of Puerto Rico. Before the court is their "Motion to Compel Discovery and Memorandum of Law in Support Thereof" (Docket No. 43), which defendants opposed (Docket No. 47). Plaintiffs replied (Docket No. 51). For the reasons explained below, the motion to compel is DENIED.

---
[1] Executive Ground Services Inc., Envoy Inc., American Airlines Inc., and American Group Inc.

Case 3:14-cv-01398-PAD   Document 52   Filed 03/31/16   Page 2 of 12

Elaine Rodriguez, et al. v. Executive Airlines, Inc., et al.
Civil No. 14-1398
Opinion and Order
Page 2

## I. DISCUSSION

### A. Standard of Review.

Pursuant to Fed.R.Civ.P. 26(b)(1), discovery may be obtained as to any non-privileged material relevant to any party's claim or defense that is reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs allege to have been dismissed from their employment without just cause and because of their age (Docket No. 31 at ¶¶ 62, 63). They claim the employer did not follow seniority, retaining and subsequently reemploying younger, less experienced personnel to perform the same and/or similar work to the one they performed at the time of their dismissal, and within their occupational classification. Id. at ¶ 63.

Defendants assert that Executive Airlines shut down flight operations, as a result of which plaintiffs were dismissed (Docket No. 47 at pp. 1-2). They state that plaintiffs were employed as Passenger Service Agents out of Luis Munoz Marin International Airport in Puerto Rico ("SJU"), and the airline no longer employs personnel at SJU in the occupational classification plaintiffs worked in. Id. To evaluate the discovery dispute, the court places it in the context of the relevant statutory provisions pursuant to which plaintiffs seek entitlement to compensation here: Law No. 80 and Law No. 100.[2]

### B. Statutory Framework.

1. Law No. 80

Law No. 80 requires the employer to pay a statutory indemnity to employees hired for undefined term who are dismissed from their employment without just cause.[3] Article 2 includes

---

[2] As stated above, plaintiffs also claim entitlement to compensation under Law No. 379. The statute requires employers to provide non-exempt employees with a meal period during statutorily prescribed windows during the workday. The employee is entitled to receive from the employer double the employee's regular rate of pay for work performed during the period set for meals. The meal law claim, however, is not implicated by any of the issues raised in the motion to compel.

[3] The indemnity consists of: (1) two months' pay plus one week's pay for each completed year of service in case of employees with

Case 3:14-cv-01398-PAD   Document 52   Filed 03/31/16   Page 3 of 12

Elaine Rodriguez, et al. v. Executive Airlines, Inc., et al.
Civil No. 14-1398
Opinion and Order
Page 3

examples of just cause, including three that relate to full, temporary or partial closing of operations; reorganizations; and actual or anticipated reduction in production, sales or profit. See, P.R. Laws Ann. tit. 29 §§ 185b(d), (e), (f). Article 3 provides that if an employer terminates employees for one of those three reasons, the employer must give preference to those employees within the same occupational classification who have greater company-wide seniority, that is, seniority with the employer counted from the last time that the employee the employee began to work for the employer in a continuous and uninterrupted manner. Id. § 185c; see also, *Guía Revisada para la Interpretación y Aplicación de la Ley Núm. 80 de 30 de mayo de 1976*, según enmendada (2014), prepared by the Department of Labor and Human Resources of Puerto Rico at pp. 52-56 ("Revised Guideline").[4]

If the employer terminates a more senior employee and retains a less senior employee within the same occupational classification, the employer has acted without just cause unless there is a clear and conclusive difference in favor of the capacity or efficiency of the less senior employee retained, in which case the higher capacity/efficiency prevails. See, P.R. Laws Ann. tit. 29 § 185c. Likewise, preference must be given to the employees discharged in the event that within six months following the dismissal, the employer hires a person in like or similar work to that which employees were doing at the time of their discharge within their occupational classification. Reinstatement must follow seniority, subject to the capacity/efficiency exception pointed to above. Id. In such cases, to avoid liability the employer must reinstate with preference

---

up to five (5) years of service; (2) three months' pay plus two weeks of pay for each completed year of service in case of employees with more than five but less than fifteen years of service; and (3) six months' pay plus three weeks' pay for each completed year of service in case of employees with fifteen or more years of service, P.R. Laws Ann. tit. 29 § 185(a); see also, Soto-Lebrón v. Federal Express Corp., 538 F.3d 45, 55 (1st Cir. 2008)(describing the Law No. 80 compensation formula).

[4] For a detailed and comprehensive discussion of this topic, see J.L. Capó-Matos, in M.J. Caterine (ed.), *Employment at Will: A State-by-State Survey*-Puerto Rico Chapter (2011), pp. 937-940; 959-966, and 2014 Supplement, p. 40-19-40-22.

Case 3:14-cv-01398-PAD   Document 52   Filed 03/31/16   Page 4 of 12

Elaine Rodriguez, et al. v. Executive Airlines, Inc., et al.
Civil No. 14-1398
Opinion and Order
Page 4

the previously terminated employee unless the person hired or reinstated (1) has greater company seniority, or (2) is clear and conclusively more efficient or capable.

These preferential retention/recall rules must be followed to avoid liability even though the reason for the workforce reduction is otherwise considered just cause. In general, they must only be applied within the occupational classification at the adversely impacted site. So they are normally applied comparing only the employees at the office, factory, branch or facility affected by the workforce reduction. See, Pages-Cahue v. Iberia Lineas Aereas de España, 82 F.3d 533, 540 (1st Cir. 1996)(holding there was no need to compare the seniority of adversely affected executive secretary located in the airport with the seniority of an executive secretary located in a different work site).

At another level, when there is a regular and usual practice of transferring employees from one site to the other and the various sites operate in a relatively integrated manner in regard to personnel matters, the employer will need to compare the seniority, performance, and capacities of the employees in the affected occupational classifications working at the various sites that operate in such an integrated manner. See, P.R. Laws Ann. tit. 29 § 185c(b). In those instances, failure to comply with the preferential treatment rules deprives the employer of just cause for the dismissal. Ruy Delgado Zayas, *Apuntes para el Estudio de la Legislación Protectora del Trabajo en el Derecho Laboral Puertorriqueño*, 155 (2007).

Finally, preferential treatment obligations carry over to certain asset-transfer transactions. Article 6 imposes them upon the assets acquirer, provided it operates those assets as an ongoing business. See, P.R. Laws Ann. tit. 29 § 185f.[5] Should the acquirer opt not to continue with the

---

[5] When the transaction is structured as a sale of stock or other property interest in the owner/employer, there is no change in the employment relationship. J. L. Capó-Matos, supra, Supplement at pp. 40-27-40-28. The employer and employee remain the same. That is not the case when the assets are transferred. In that situation, the employee's relation with the previous owner ends. Id.

Case 3:14-cv-01398-PAD   Document 52   Filed 03/31/16   Page 5 of 12

Elaine Rodriguez, et al. v. Executive Airlines, Inc., et al.
Civil No. 14-1398
Opinion and Order
Page 5

services of some of the employees and hence does not become their new employer, it must choose the employees to be hired applying the preferential treatment framework laid out in Article 3. Revised Guideline at p. 63.

2. Law No. 100

Law No. 100 prohibits the employer from discriminating against employees and applicants for employment because of their age, sex, race and other protected characteristics. A plaintiff establishes a *prima facie* case of discrimination under this statute by demonstrating that (1) she suffered an adverse employment action, (2) the adverse action lacked just cause; and (3) there exists some basic fact substantiating the type of discrimination alleged to have occurred. Salva v. Eagle Global Logistics, 2006 WL 2685109,*3 (D.P.R. September 18, 2006); Morales v. Nationwide Ins. Co., 237 F.Supp.2d 147, 152 (D.P.R. 2002).

If the *prima facie* showing is made, a statutory presumption of liability is triggered, shifting to the employer the burden of showing by a preponderance of the evidence that the action was not motivated by discrimination. For these purposes, the term "just cause" is construed by reference to the meaning given to the term under Law No. 80. Varela-Teron v. Banco Santander de Puerto Rico, 257 F.Supp.2d 454, 464 (D.P.R. 2003); Belk v. Martínez, 146 D.P.R. 215, 230 (1998).

C. Discovery[6]

With this background, plaintiffs request an order compelling defendants to produce:

---

Article 6 addresses some of the effects of the ownership transfer upon the employee(s). For a situation where assets were transferred and not operated as part of an ongoing business, see, Espinosa-Cabrera v. Mass Services Corporation, 95 DTA 304 (Puerto Rico Circuit Court of Appeals, September 30, 1995). See also, Puerto Rico Department of Labor and Human Resources Advisory Opinion ("Consulta") Nos. 14780 (transfer of ongoing business) and 14672 (information provided evince no such transfer).

[6] In the motion to compel, plaintiffs refer to 31 requests for information (Docket No. 43 at pp. 4-10). In their reply, they seek an order for production of the information referred to in the text (Docket No. 51 at ¶ 7). The court will limit its analysis to the latter.

    a. The names of the employees who occupied the alleged vacant positions, ages, experience and date in which the positions were occupied;

    b. The names, ages, experience and date of change from one company to the other, name of the entities of the transferred employees between any defendant and Executive Airlines in Puerto Rico or to and from Puerto Rico;.

    c. The names, ages, experience and date of change from one company to the other, name of the entities of employees transferred from Executive to Envoy in Puerto Rico or to and from Puerto Rico.[7]

### D. Analysis

1. Unjust Discharge /Discrimination

Plaintiffs' request must be measured against the allegations setting forth their claim. In essence, they allege to have been dismissed on March 31, 2013 from their employment and that their discharge was unjust and discriminatory because the employer dismissed them in violation of statutory seniority rules, and retained and hired younger, less experienced personnel thereafter to do the job plaintiffs had done within the same occupational classification (Docket No. 31 at ¶¶ 62-64). The court reads plaintiffs' claim as one of unjust discharge linked to discrimination, in the sense that the employer acted without just cause under Law No. 80 because it violated the statute's preferential retention/recall provisions, and for that reason, should be presumed to have discriminated against plaintiffs because of their age under Law No. 100 (Docket No. 31 at ¶ 94).

Plaintiffs identify Executive Airlines as their "direct employer." Id. at ¶ 28. Moreover, they assert that Executive Airlines operates establishments at SJU in Puerto Rico. Id. There is no allegation that Executive Airlines maintains establishments or work sites outside of Puerto Rico.

---

[7] It is unclear what the term "experience" refers to in items (a), (b) and (c).

Therefore, Executive Airlines is not required to produce information on employees or openings outside of Puerto Rico, for it has none.

Plaintiffs argue that even assuming the preferential retention/recall rules were followed within Executive Airlines, those rules were violated when the remaining defendants are brought into the mix, because there are other younger, similarly classified employees with less seniority working in those entities (Docket No. 43 at ¶ 4). The argument must be evaluated in light of Reyes-Sánchez v. Eaton Electrical, 189 D.P.R. 586 (2013), and Carrasquillo-Ortiz v. American Airlines, 94 F.Supp.3d 126 (D.P.R. 2015), *question Certified by* 812 F.3d 195 (1st Cir. 2016).

In Reyes-Sánchez, the Puerto Rico Supreme Court held that the seniority analysis under Law No. 80 is limited to transfer of employees between the company's establishments in the jurisdiction of Puerto Rico, such that the statute does not require an analysis of movement of personnel between the company's establishments on an international level. Reyes-Sánchez, 189 D.P.R. at 606. Applying Reyes-Sánchez, a sister court in this District held that the Law No. 80 seniority analysis is strictly limited to companies within Puerto Rico, and dismissed a Law No. 80 claim predicated on the argument, similar to that made by plaintiffs here, that the employee's seniority must be compared not only with the seniority of employees in Puerto Rico but also with that of similarly classified employees outside of Puerto Rico. See, Carrasquillo-Ortiz, 94 F.Supp.3d at 134.

On appeal from the dismissal, the First Circuit viewed Reyes-Sánchez as arising from a factual scenario involving employees assigned to different corporate entities rather than to the same corporate entity. In that sense, it certified to the Puerto Rico Supreme Court the following question:

Case 3:14-cv-01398-PAD   Document 52   Filed 03/31/16   Page 8 of 12

Elaine Rodriguez, et al. v. Executive Airlines, Inc., et al.
Civil No. 14-1398
Opinion and Order
Page 8

> In *Reyes Sánchez v. Eaton Elec.*, 189 P.R. Dec. 586, 608 (2013), the Puerto Rico Supreme Court stated that the analysis of employer transfer activity under Article 3 of Law 80 "is limited to determining the frequency of transfers of employees between the company's establishments in Puerto Rico." Under *Reyes Sánchez*, does that limitation apply where the employer has one office in Puerto Rico and multiple offices in other jurisdictions and operates all of its offices **under the same corporate entity**? (Emphasis added).

Carrasquillo-Ortiz, 812 F.3d at 200.

In line with the First Circuit's view, Law No. 80 does not bring into the analytical mix corporate entities other than the entity where the dismissal occurred. Because Executive Ground Services, Inc.; Envoy, Inc.; American Airlines, Inc.; and American Airlines Group, Inc. have been identified as different corporate entities – and there is no allegation that they are corporate shams created to avoid obligations – whether those entities employ or employed personnel outside of Puerto Rico within the occupational classifications plaintiffs alleged to have occupied, is irrelevant for seniority evaluation purposes under Law No. 80.[8]

Plaintiffs contend that all of the employees of Executive Airlines that were not dismissed on March 31, 2013 and that were under the payroll of Executive Airlines as of December 31, 2013, are now under the payroll of Executive Ground Services or Envoy (Docket No. 31 at ¶ 32). Even though, by mentioning successive dates of employment with different entities, plaintiffs seem to be referring to a successorship, the allegation does not lead to the discovery they have asked for.

In general, successorship describes a situation where one entity has succeeded another in the ownership of a business. The Puerto Rico Supreme Court has held that the successor is liable under Law No. 80 to employees that the predecessor dismissed without just cause. See, Piñero v.

---

[8] Plaintiffs refer to all defendants as a "single employer" (Docket No. 31 at ¶ 64). A recognized method to determine whether a single employer exists is the corporate sham test. See, Romano v. U-Haul Intern., 233 F.3d 655, 665 (1st Cir. 2000). Given the First Circuit's focus on corporate entities, the court has looked into whether corporate sham allegations were made here.

Int'l Air Serv. of P.R. Inc., 140 D.P.R. 343, 351-354, 357 (1996)(so holding in context of dismissals that took place five months prior to transfer of business). Likewise, the successor must comply with Article 6 of Law No. 80 in some circumstances. And so successorship opens the door to impose liability upon the transferee in two circumstances: (1) indirect liability for the predecessor's decision to terminate without just cause an employee hired for undefined term; and (2) direct liability for violation of the preferential treatment rules in the context of the transfer of an ongoing business. In the same way, successorship has been applied to claims under Law No. 100. Belk, 146 D.P.R. at 230.

To determine whether successorship exists, the Puerto Rico Supreme Court has relied on some of the elements defining a successor employer under the National Labor Relations Act. Those elements include:

> (1) Whether there is a substantial continuity of the same business activity with the same name involving production of the same products or rendering of the same services.
>
> (2) Use of the same facility for the operations.
>
> (3) Use of the same machinery and equipment.
>
> (4) Maintenance of the same managerial and supervisory personnel.
>
> (5) Employment of the same or substantially the same workforce.
>
> (6) Continued operation of the business during the transition period.
> (7) The predecessor's ability to provide a remedy to the prevailing plaintiff.

Piñero, 140 D.P.R. at 343; *Revised Guideline* at pp. 64-65; J. L. Capó-Matos, supra, 2014 Supplement at p. 40-30. To evaluate successorship liability in the context of Law No. 100, the Puerto Rico Supreme Court has additionally inquired upon whether the successor had notice of the claim; the benefit the predecessor and successor may have derived from the challenged action; and

Case 3:14-cv-01398-PAD   Document 52   Filed 03/31/16   Page 10 of 12

Elaine Rodriguez, et al. v. Executive Airlines, Inc., et al.
Civil No. 14-1398
Opinion and Order
Page 10

the relative capacity of each entity to provide relief, although no single factor is controlling. Bruno López v. Motorplan, Inc., 134 D.P.R. 111, 122-123 (1993).

From this framework, if Executive Ground Services or Envoy were considered a successor, they may be liable for Executive Airlines' violations of the preferential treatment provisions of Article 3. As Executive Airlines has been alleged to operate one establishment – in Puerto Rico – information related to out-of-Puerto Rico openings and hiring would be irrelevant. Similarly, if Executive Ground Services or Envoy were an acquirer of an ongoing business under Article 6, they could face liability if during the six month period following the business transfer, they hired personnel within the occupational classifications plaintiffs were assigned to in SJU without complying with those provisions.[9]

Failure to comply with those rules would mean that all or some of Executive Airlines employees' preferential treatment rights would have been violated and, by extension, that their dismissal would lack just cause. While evaluation of the ongoing business scenario requires data on transfers, only information regarding personnel transactions in Puerto Rico or to and from Puerto Rico during the six month period following the business transfer would be relevant and must be disclosed.[10]

To the extent plaintiffs rely on absence of just cause for their dismissal under Law No. 80 to trigger the discrimination presumption set in Law No. 100, discovery obligations must be assessed against the parameters already discussed in connection with Law No. 80. Along the same

---

[9] A six-month window has been used to evaluate successorship obligations under Article 6. See, Revised Guideline at p. 63.

[10] From the motions *sub judice*, it is the court's understanding that defendants do not object to provide such information (Docket No. 47 at pp. 13-14).

Case 3:14-cv-01398-PAD   Document 52   Filed 03/31/16   Page 11 of 12

Elaine Rodriguez, et al. v. Executive Airlines, Inc., et al.
Civil No. 14-1398
Opinion and Order
Page 11

line, as stated previously, to complete a *prima facie* case of discrimination plaintiffs would need some basic fact substantiating the type of discrimination alleged.

To that end, plaintiffs could show, among other things, that Executive Airlines retained significantly younger, less senior employees within plaintiffs' occupational classification in Puerto Rico; that Executive Airlines re-hired less senior, substantially younger employees within Puerto Rico to occupy positions within plaintiffs occupational classification; or that a successor gave preference in hiring within that classification in Puerto Rico to less senior, significantly younger employees within the six-month window following the transfer. In consequence, information on out-of-Puerto Rico employees would not be necessary to satisfy a *prima facie* burden under Law No. 100, and thus, would not have to be disclosed during discovery.[11]

   2.   Failure to Hire

Plaintiffs allege that they "were not offered positions that were actually available and the offerings that they were made were not real, genuine or reasonable" (Docket No. 31 at ¶ 65). It is not clear whether they applied to a particular position or positions, and having so applied, if their applications were rejected. Should that be the case, plaintiffs may be entitled to know the characteristics of the persons hired, if any, in the positions they applied for. And that would be the case not only for positions in Puerto Rico, because the scenario would have to be evaluated under the rubric of a failure-to-hire claim.[12] Be that as it may, information presently before the court does not permit a reasoned analysis of this alternate failure-to-hire angle, separate and apart

---

[11] Information about defendants' corporate and operational relationships would be relevant to evaluate potential successorship liability. As no specific dispute has been brought to the court's attention in connection with that type of information, the court offers no opinion on such matter.

[12] According to plaintiffs, defendants informed them of vacant positions that they could apply for outside of Puerto Rico (Docket No. 51 at ¶ 3). The assertion is not in the complaint or in the amended complaint. There are no allegations on applications individually filed and rejected.

Elaine Rodriguez, et al. v. Executive Airlines, Inc., et al.
Civil No. 14-1398
Opinion and Order
Page 12

from the preferential retention/recall scenario that plaintiffs clearly have brought forth under Law No. 80.[13]

## II.    CONCLUSION

In view of the foregoing, plaintiffs' motion to compel is DENIED.  Defendants shall provide to plaintiffs by April 18, 2016, all of the information that plaintiffs have asked for deemed relevant under the parameters laid out in this Opinion.  Considering that the complaint was filed in 2014, no discovery-related motions will be entertained after May 16, 2016.  All discovery, factual and discovery, must be completed by June 30, 2016.  An Amended Case Management Order will follow.

SO ORDERED.

In San Juan, Puerto Rico, this 31st day of March, 2016.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge

---

[13] Generally, as opposed to "hiring," recall" involves an employee on lay-off or leave of absence, in a situation where employment with the employer has been temporarily interrupted.  See, Damron v. Rob Fork Min. Corp., 945 F.2d 121 (6th Cir. 1991)(discussing concept under National Labor Relations Act and Worker Adjustment and Retraining Notification Act).  Law No. 80 contemplates that situation in imposing upon the employer preferential recall obligations under Article 3, within a limited six-month window following a dismissal anchored on Article 2b, Subsections (d),(e) or (f), P.R. Laws Ann. tit. 29 §§ 185b (d), (e), (f).  As stated previously, the same six-month window has also been used to evaluate successorship obligations under Article 6.  See, Revised Guideline at p. 63.